Per Curiam.
 

 Matthew Brooks iij his lifetime was possessed of three land warrants of 640 acres each. Two of the warrants were his own property, and the other belonged to his son Arthur.
 
 *203
 
 In the year 1807, about the time the land office was opened, he delivered them to Alexander Smith for the purpose of having them located and surveyed, that
 
 grants
 
 may issue thereon. A. Smith, at the time of receiving the warrants, or shortly after, associated himself with several others, all complainants in this cause, as a company of locators, for the purpose of furnishing locations, and making entries on all warrants put into their hands, and to superintend the surveying, and procure grants to be issued thereon; and by contract were to be equally interested in said business, and the proceeds or profits thereof. This association, for those purposes, was generally * known. It was a prevailing custom, at that time, that the locator should have one third of the land for his services. The warrants furnished by Matthew Brooks were located by Henry Rutherford, one of the said company of locators; and three grants were afterwards procured thereon by said company for 640 acres each ; two in the name of Matthew Brooks, and the other in the name of Arthur Brooks. The bill charges that Matthew Brooks, for himself and Arthur, agreed to convey, or cause to be conveyed, by deed in fee simple, one third of each tract as soon as grants should be procured for them. And also, after grants issued, promised to have a division made, but that the defendants, his heirs, now refuse to do so, in violation of the general usage among locators, as well as the agreement made pursuant thereto. It is also stated that, at a dissolution of the partnership between the complainants, a division was made of the lands to which they were entitled. That the locator’s part of grant No. 4,452 fell to the share of Gideon Pillow, and grant No. 4,382 to Alexander Smith, and grant No. 4,583 to Henry Rutherford. They pray that a decree may be made vesting the title in the said Gideon, Henry, and Alexander, respectively, agreeably to this division, and that partition thereof may be made, or that the defendants may be compelled to pay the value. The answers admit that the warrants were placed in the hands of Smith for the purposes stated in the bill, but deny that any agi’eement was then, or at any time after-wards, made as to the amount or manner of compensation, or that Smith gave any information of the partnership stated in the bill, except the following. After the locations were made, Arthur Brooks, in behalf of himself and his father, made an agreement with Smith that he should have one tract specified, as a compensa
 
 *204
 
 tion for his services as locator; but this latter agreement has not been proved, nor is any proof made of any particular agreement respecting the mode of compensation, *' at the time the warrants were placed in the hands of Smith. The only question made by the defendants in this case is this: can the court, without proof of any express contract as to the amount or mode of compensation, decree to the complainants one third of the lands by them located for the defendants, pursuant to the
 
 general custom and usage
 
 among locators. The bill charges a special contract before, and promise after the locations were made, to convey one third of the lands to be located. To the bill the defendants pleaded the statute of frauds and perjuries in bar. 1801, ch. 25. The plea was overruled, and the defendants ordered to put in their answer. So that the law of this case must be considered as decided so far as respects the plea. In all cases where services are performed by one man for another, at his request, the law implies, and the dictates of natural justice require that compensation shall be made, though no express promise shall have been made for that purpose. In this case', we may infer from the proof that there was a contract, or at least a mutual understanding between the parties respecting the compensation, and that one third of the land was considered by them to be the amount of that compensation. On what other supposition can we account for the conversation that passed between Arthur Brooks, who, it appears, was acting for the father as well as himself, respecting the mode in which it would be best to make a division ? Why assent to a division by tracts ? Assigning one to the locator would be better than dividing each tract. This conversation, though it is not proved that any agreement was the result, will convey the idea that no other mode of compensation was then contemplated except by a conveyance of land.
 

 In the answers, the defendants say that they are willing to convey one tract, which they specially designate. From this evidence a conclusion may be drawn, that there was a contract to convey one third * of the land ; and, if so, it will follow as a consequence that neither party, without consent of the other, can designate or specify the particular part to be conveyed. In such cases, the part to be conveyed should be of equal value in proportion to the quantity with that- retained. This view of the case, as presented by the proof, does not differ much in principle
 
 *205
 
 from that stated by the bill. And if it were now for the first time to be decided, whether this court could, on such parol proof, divest one man of his legal title and vest it in another, the opinion of Judge Roane would probably be, that this court ought not to interfere. in decreeing a specific performance, even with the additional proof of the usage and custom of locators; which usage and custom seems only to be a custom common to them with other men, to take what they can get, and to make the best bargain they can; sometimes a compensation in money ; sometimes the holders of warrants prefer giving part of the land — one fourth, one third, or one half; but that contracts for one third are much more common than for any greater or less quantity. And this custom may be given in evidence in a trial at law, in a
 
 quantum meruit
 
 for services rendered, &c., to aid the court and jury in their determinations respecting the amount of damages ; but will not authorize a decree for a title to any part of the land, when no contract for that purpose has been made. And even when such a contract has been made, and not reduced to writing, it is still very doubtful in the mind of Judge Roane whether the Court of Equity ought to interfere. But in this case the court, at a former term, decided that the statute of frauds and perjuries will not be a bar, and as the proof makes out a case of contract similar to that stated in the bill, the court must be governed by the decision heretofore made, and afford the complainants relief by divesting the title of one third of the average value out of the defendants, and vesting it in, the complainants, or such of them as * are entitled to it; but as the court cannot now ascertain what particular land should be thus divested, let commissioners be appointed to lay off by metes and bounds one third part of each of the three tracts described in the bill, of equal value, in proportion to the quantity, to, the other two thirds, and make the report thereof to next court, that the court may be enabled to make a final decree therein. The question of costs to be reserved to the final hearing.
 

 See
 
 Davis
 
 v.
 
 Walker,
 
 4 Hay. 295;
 
 Smith
 
 v.
 
 Brooks,
 
 3 Hay. 248;
 
 Terrell
 
 v.
 
 Murray,
 
 2 Yer. 384;
 
 Hopkins
 
 v.
 
 Toll,
 
 4 Hum. 46; King’s Digest, 2520, 2877, 11,092.